Our final case this morning is United States v. Loumoli, No. 20-4091. Counsel, you may proceed. Mr. Sandiford, you can start us off. Thank you. My name is Dean Sandiford from the Federal Defender's Office, and I'm here for Vilayami Loumoli. The issue in this case is whether Mr. Loumoli waived his right to challenge his conviction by waiving the right to challenge his sentence. He didn't because no matter how broadly the term sentence is construed, it doesn't include convictions. Convictions and sentences are conceptually distinct. Convictions and adjudication of guilt, and a sentence is the punishment imposed. A conviction is just not part of a sentence. The definition of sentence that's in the collateral attack waiver in this plea agreement confirms this. It says that sentence refers to, quote, all aspects of a court's sentencing authority. And the examples it gives are fines, restitution, imprisonment, supervised release. These are all parts of the sentence. They're all part of the punishment. Yes, it's true that that list is not exclusive. The plea agreement says that, but there's no reason to think that any unmentioned aspects are anything other than punishment, anything other than a part of the sentence. The district court ruled and the government argues on appeal that a conviction challenge is necessarily also a sentence challenge because if the conviction is vacated, the sentence is vacated as well. That's not true. A sentence challenge challenges the sentence. It alleges that there's an error in the sentence or in the manner in which it was determined. A conviction challenge, by contrast, challenges the conviction. It says that there was an error in the conviction or that there's something otherwise wrong with it. This distinction between conviction challenges and sentencing challenges is reflected in the way parties write plea agreements all the time. When parties intend to waive both, they specify it. They waive them explicitly and separately. You see this in hundreds of this court's cases. I mean, you know, lawyers are known to use a belt and suspenders approach. Sometimes they're redundant, but there's no reason to think that's what's going on here. There's no authority outside the district of Utah for this notion that you waive a conviction challenge by necessity whenever you waive a sentencing charge. So, Mr. Sandefur, let me ask you to respond to this argument about the wording of Section 2255, which uses the word sentence and does not include the word conviction. And I understand it's been interpreted to permit challenges to convictions. But my question to you is this to rule for you on this appeal. Do we need to hold that the word sentence means something different in the plea agreement than it does in Section 2255? I don't think you have to, but that's certainly one basis. I mean, you know, no matter how 2255 is the word sentence is interpreted, the parties defined sentence in the plea agreement and parties can define terms however they want. And this notion that it includes 2255 challenges of convictions is just not in the plea agreement. Sentence was defined as aspects of the court's sentencing authority. And no matter what 2255 means, it's not an exercise of the court's sentencing authority to enter a conviction. But in any event, well, you know, I'm looking at the plea agreement and in particular the waiver, and there is specific reference to Section 2255. Yes, there is. He's waiving challenges to his sentence brought by way of 2255. I mean, that's how the plea agreement is worded. It's a collateral. I keep calling it an appeal waiver. It's a collateral attack waiver. And it says you're waiving all collateral attack challenges to your sentence, including by way of a 2255, which is just one means of bringing collateral attack. Really, the main way of bringing the collateral attack on a sentence or conviction. But nowhere in that definition does it say that the word sentence includes challenges to convictions under 2255. I think in any event, the government's wrong that the use of the word sentence means convictions in 2255. I mean, you know, we discussed this in our reply brief, but the history of that provision is it was just a venue changing provision. It was a habeas corpus. It preserved all the rights of habeas corpus and just moved the venue to the statute to the I'm sorry, the court of sentencing rather than the court where the prisoner was confined. And what the Supreme Court said was like, look, this is still just the right of habeas corpus as it always was. You just filed in this court instead of that one. So there's really no reason to think that, well, the Supreme Court certainly didn't hold that will the term sentence means convictions in 2255. I think kind of in a broader sense, and I don't have any authority for this, but I think it might make sense that, you know, habeas corpus is traditionally a challenge to illegal confinement. And only people who are in custody can file habeas corpus applications, including 2255. So it makes sense in that context that Congress would use the word sentence and focus on the word sentence because at bottom what the prisoner is challenging is his or her confinement. And that the confinement is obviously as a result of the sentence, but that doesn't mean you can't challenge convictions under that statute as well. This is jumping ahead a little bit, but I want to make sure I don't forget about it. You know, there's this Baker case out there that is most likely going to decide the merits of Mr. Romali's 2255 claim. So if this court is inclined to reverse, you know, we suggested in the brief. And certainly the court has the power to hold it. The court can do whatever it wants on that. But we would ask that you not hold it. And that's because any delay in resolution could prejudice Mr. Romali. If this court holds pending Baker, then if Baker comes out his way, we'd have to wait for a decision from this panel on this issue and a remand back to the district court after any rehearing proceedings. But Mr. Romali is already served. Baker was argued this week. It was argued on Wednesday. That's correct. But you're asking us if we agree with you, you'd ask us to vacate it and immediately send it back. Don't don't abate in this court. Send it back to the district court. That's right. And it really is still abate itself. That's true. But he'd be further along on the road. You know, he wouldn't have to wait for this decision and a remand. And maybe the government seeks rehearing. He's already served 13 years. And if and if he prevails on the 2255, if Baker does, then he's only looking at a mandatory minimum of 10 years. So, you know, we would ask that you move ahead with this appeal without waiting for Baker. I see. Unless the court has additional questions, I think I've covered my argument. I don't want don't need eight minutes in rebuttal, obviously, but I'm happy to to reserve whatever you'll give me. Well, you can have it if you want it. All right. Mr. Tenney. Thank you, your honors. Ryan Tenney, on behalf of the United States, and may it please the court. Rather than going with my prepared intro, I think I'm just going to start where Mr. Sandiford left off. If I understood what he just said, he just said that if Baker prevails in Baker, then Mr. Mowley would only quote would only be looking at a mandatory minimum of 10 years. And that's precisely our point. He says in his brief reply brief that what he's asking for. We only have a quote, indirect or an incidental effect on his sentence. And yet what he's saying in argument is the thing that we think is obvious and unavoidable, which is that if he's right on his challenges to his convictions, there is no choice procedurally. But to vacate his sentences and reduce them. Just a function of criminal procedure. That's not I mean, yeah, he's got to challenge his conviction before he can get that sentence that he that would go along with it. I don't I don't find that confusing. Oh, I agree with you, Judge Merritt. And that that is our point is when the government engages in this plea negotiation and helps craft this plea agreement. The thing that the government thought it was getting out of this is precisely this, because, as you put it, this is how criminal procedure works. The government thought, I don't think we're thinking alike on this, Mr. Timmy. You know, he's challenging his conviction. He is. But we're I understand my result in a different sentence, which is what he would hope. But it's complicated. Right. We don't think it is either, but we think it's not complicated. I sense in perhaps a different direction. What we're concerned about is the validity of the plea agreement that the government and Mr. Mowley negotiated and what the government thought it was getting out of this was an agreement from Mr. Mowley that he couldn't go after his sentences and a twenty to fifty five conviction. And if what he's acknowledging is that the natural result of his proposed argument is that his sentence be reduced by twenty five years. Then he's asking for the thing that he we believe he agreed to not ask for. And this kind of comes back to our work and your intent. But looking at the plain language of your your waiver, I the waiver of the collateral attack. I don't see where the government can make that argument. Well, this this is where we get there, Your Honor. And I respect where you're coming from. And I acknowledge this is one of those cases that you can look at it one way and you can look at it another way. This is why we think our way is better. Is the question on if the question on appeal were what the term sentence means, I think we would lose ordinarily. But that's not what we think the sole question is. What we think the question is, is what sub provision D means. And what he says in total is that he's, quote, knowingly, voluntarily and expressly waiving his right to challenge his sentence in a collateral review motion, including those brought under twenty to fifty five. It's that complete context, Your Honor, which we think brings it to our point of view, which is the thing he was agreeing to not do was challenge his sentence in a twenty to fifty five motion. Twenty to fifty five motions routinely use the word sentence to include conviction challenges. They have to statutorily. And so how did you define sentence? Well, in the twenty to fifty five, how did you define sentence in the plea waiver or in the. Well, that would get you to paragraph F, which would be the sentences is being used broadly and then it gives the list. But that's what we that's what we have to look to. Not twenty to fifty five, but how you define sentence in the waiver. Right. But I don't think you would excise sub section D from that analysis either, because you interpret a plea waiver as a whole. You interpret all the parts in harmony with each other. And so if D and F are being read in harmony, because D is the waiver provision and then F is the definitions provision for the waiver provision. I don't know that you would be able to excise D from this analysis. I think you read them together. And if you read them together, what the parties are talking about is a challenge to a sentence under twenty to fifty five. Well, the thing that he's wanting to do is, by statute, a challenge to a sentence under twenty to fifty five. That is the thing he's trying to do. And he makes the point, the historical point about the passage of the statute and its relationship to the traditional way, the baby's corpus and so forth. And I understand the point. But what we're ultimately talking about is a statute. Congress replaced the writs with the statute. And so that that's a function of how the statute is interpreted. And the word that the statute uses is sentence. And what the courts have done with that word in that context is said that includes a challenge to a conviction. And so when the government helps draft this plea agreement, I think it could rightfully look at this universally understood context and just track the statute that that's what this agreement does. It tracks. I'm sorry. Go ahead, Judge. I was just going to say, apparently, the government in some cases knows how to draft an agreement that that uses the word conviction because that's the PAM case. Right. Yeah. And that's not all that hard either. I certainly agree that it would not have been hard to have added those extra words and it would have spared me some time this week if they had. But but here's here's my response to that. If I may. The fact that there would have been a better way to put this doesn't mean that the government's not entitled to the reasonable construction of the way that was put. And so we I will readily concede we could have drafted a better agreement. And if we lose this case, I suspect we probably will. But you might even do so if you win this case. We might even do so. Although if we win and it's a published opinion, I don't think we'll have to. But the point is, is even though in any other contract analysis, you're not going to say because this is the most optimal way, everything short of that, we're going to we're going to spin in the opposite direction. So it would have been more optimal. Judge Merritt's a readily acknowledged for us to have said conviction and sentence. But those who drafted this agreement thought that the word sentence in 2255, it was obvious to everybody what it means, because this is the only thing it can mean statutorily. So when he agrees to waive that, that's what they thought he was waiving. And it gets to this this question that's raised in the reply brief, which is the impact of his his own understanding of this. Before you get there, I've got another question, but I I don't want to butt in before Judge Matheson, but I've got another question related to this. When you're talking about that agreement, when when was do you know how long you've been using that agreement? I don't know. But this this is a pretty old case. Well, I mean, it looked to me like there were a number of cases back several years ago where there was some question about what sentence means. And that's why you might have added the definition of in this case that sort of broadened it to make sure it included supervised release and probation, that sort of thing. It looked to me like this. This definition might have been specifically added into to deal with those types of challenges that really were about the sentence. So I just I just wondered if you had any information about that. Here's what I'd say about that. I don't know the historical lineage of that particular clause. I know that it was there at least as of 2008. That's when this agreement was. And I know that it's still there now. And the agreement that our office is using. We have at least those 13 years, but then going more particularly to the point you just made, if we are then going to move outside to the sort of colloquial understanding from other sources, then I think we really win because then the most obvious colloquial outside place to look is 2255. I'm not saying that we should go there. I just you were talking about several mentions of the government's intent there. And I, I just thought maybe the intent might have been otherwise. Right. Yeah, I can't speak to that specifically. I'm asked to the mistake. Isn't your argument premised on this court construing the agreement in your favor. Yes, yes, we want you to construe the agreement in our favor. Yes. And is that the way we're supposed to do this. Ordinarily no ordinarily it is construed against the government, this we think. Why is this the exception to our ordinary protocol, because of the broad interpretation clause I think that's the most important component of that clause. I think it also shades how you look at the term, I think it works on both levels, but I think the most direct thing that it does is, is take this outside the normal rule of construction that these agreements are construed against the government because the parties are expressly saying yeah, but they're not saying the opposite. 100%, but they're saying broadly and broadly is the opposite of narrowly which is what those cases say, what if the agreement. Instead of saying broadly said this agreement is to be construed in favor of the government. Would that be okay. I think the parties could agree to that. Yes. And that would be and that would bind the court. I believe so yes because these are treated as contracts. And so the parties could negotiate that term, I believe, so I can't think I've had why that would be unlawful. But, as, as Mr Sandefur pointed out in subsection F. Yes, it does say construe the word sentence, or understand the word sentence broadly but then all the examples that follow that are sentencing examples. That's true. Doesn't say, including convictions. That's true. And I think that in an ordinary case that that would, I think, be more problematic for us but but the language that gets us out of that problem, we believe, is in the middle of sub effort says including but not limited to. We haven't gone this deep in the briefing but there's a line of, I wondered if this was going to invoke is used in generous back that canon. And there's a line of cases from this court on the is used in generous canon. Let's say that if you have that phrase, a phrase like that, including but not limited to it takes you out of that canon. And so we think the important that can and is that there is that language within F is to say here's a list of things that are clearly covered. But you can go beyond that too. Let me ask you this. You've argued in your brief that a defendant cannot challenge his convictions without simultaneously challenge in his sentences. Is there any way. Mr. Lee Molly would be able to challenge his conviction. After completing his sentence. He'd have to fit it under some exception within the plea agreement. I don't pretend to have memorized the plea agreement, but we would be able to invoke the waiver as far as the waiver goes. Well, if he didn't wave a challenge to conviction. You're saying no longer have a sentence. Maybe I'm misunderstanding. You're saying if it was something other than a 2255. Well, I suppose that if it were a 2255, even if he were on supervised release, I suppose he's still serving his sentence. And then if if that's done, then he 2255 may not be. Let me let me give you another another scenario. What if a defendant had been sentenced to equal concurrent sentences on multiple counts? Could that defendant under this plea agreement waiver bring a 2255 challenge to one of his convictions, even though a successful challenge wouldn't reduce his period of incarceration? Just more interested in taking one of the sentences off his rack or one of the convictions off his record. My instinct is that the answer is yes, because he's still challenging a sentence. And in the back of my mind, he's challenging his sentence. It wouldn't change a sentence. It would just take a take one of the multiple convictions off his record. Because if I understand the way the system works correctly, there may well be downstream implications with BOP or somebody else relating to how many of the sentences are still in play. And so our interpretation of this is when he says he can't challenge a sentence, that just means he can't challenge a sentence period. And if he had wanted to negotiate a reservation on that for that kind of provision, he could have, but he didn't. That would be our response to that. The point that I was I was wanting to get to earlier that I wanted to make sure that I address, because I think it helps clarify some of the issues raised in the reply brief, is the impact of his alleged misunderstanding. Or, quite frankly, maybe it is a misunderstanding. I'm not in a position to contest that. We don't think that that particular argument is quite proper here because of the way that the Han factors work. The Han factors for interpreting an appeal waiver have, of course, three steps. Step one is the scope of the waiver. Step two is the defendant, whether he knowingly or involuntarily entered the waiver. And then step three is the miscarriage of justice. The only thing that you've granted a COA on is step one, which is the scope of the agreement. You haven't granted a COA on step two, which would be, did he understand, did he know the scope of the agreement, or did he know what he was waiving? And that's why this circles back to what we argued in a brief. That's why this court's cases, although they have said on step one, we use contract principles, the test has ultimately been framed as an objective one. It's what a defendant's, quote, reasonable understanding would be. And the reason that makes sense is because when you treat step one as a question of law, what you're looking at is what a defendant would reasonably understand, meaning what do these terms mean legally? And you don't need to look any further than Pam to see how this plays out. When the parties litigated in Pam what the word conviction meant, you didn't remand for the prosecutor to get on the stand and say, this is what I think conviction meant in this case. Or you didn't get the defendant on the stand and say, this is what I thought conviction meant. What you said is, no, no, for step one, as a matter of law, this is what a defendant would reasonably understand the term conviction to mean. And so you would do the same thing here. You would say, as a matter of law, what does a challenge to a sentence in a 2255 mean? And if Mr. Romoli then wants to say, OK, well, I didn't know that, that would be a step two claim. But he didn't make that step two claim in his petition and you haven't granted a COA. So that's that's why we think that that's not as problematic as the reply might suggest. Our bottom line position is that under the step one analysis, you give the terms their correct legal meaning. And the correct legal meaning of a challenge to a sentence under 2255 would include the challenges he's making. And then when you consider the fact that the necessary byproduct would be to reduce the sentence by his own account by at least 25 years, it's covered. That's our position. Thank you, counsel. Mr. Sandiford, has Mr. Tenney given you a few things to address? Yes, yes, he has. I'd like to start with the last point. I mean, I don't think we're in disagreement about what the law is. When you're determining the scope, you look to what the defendant reasonably would have understood. That is an objective test. It doesn't matter what Mr. Romoli personally thought. But, you know, no court has ever held that sentence means conviction in 2255. So the idea that anybody would reasonably understand that in the absence of any court authority whatsoever seems like a stretch to me, even if this court were to hold in this case that that Mr. Tenney is right about how the statute is interpreted. It's novel and it has not been anticipated in any other court. So I don't think that's part of how he would have reasonably understood or what he would have reasonably understood sentence to me. Judge Matheson on your question about whether he could raise this after his sentence is done. Yes, he'd still be in custody when he's on supervised release. But the one year statute of limitations would have long since run. So that would not be available to him. He has a year after Davis to raise this claim and that's it. And then it's gone. So there isn't a way for him to wait and challenge his conviction until after his sentence is over. I'd also like to address briefly this idea that what Mr. Romoli really wants is a lower sentence. And that is undoubtedly true of pretty much anybody who challenges their conviction, I would think. But he's not he's not entitled to a lower sentence. He's maybe not entitled to a lower sentence at all. But he's not even entitled to a resentencing because there was error in his sentence. He's entitled to a resentencing because without the he has to 924 C's right now on the second one under the law at the time he had a 25 year mandatory minimum. So if one of them drops out, his mandatory minimum on the remaining charge drops from 25 to 10 years. He's entitled to be resentenced based on that new mandatory minimum, not because there's anything wrong with the sentence he's serving, but because the other conviction has been vacated, which just again underscores the point that this is a conviction challenge. He's saying that his 924 C conviction is void and needs to be vacated because it violates Davis. Unless the court has further questions, that's all I wanted to say. Does the PAM decision help the defendant or help the government here? I think it helps us in the sense that Pam recognizes that a conviction is not a sentence. But I don't think it fully disposes of Mr. Tenney's argument that if the conviction goes, the sentence has to go with it. Therefore, a conviction challenge is a challenge to the sentence. Pam was the reverse situation and he's correct that it doesn't apply to that. We think that argument is wrong for all the reasons that we've already explained here in our briefs. But overall, I think Pam, that argument aside, I think Pam is fully controlling. Other questions? All right. Well, we appreciate both of your arguments this morning. Interesting case, well argued, and we'll consider the case now submitted and counsel are excused.